Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICARDO RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>GARRISON CAPITAL INC., JOSEPH TANSEY, BRIAN CHASE, CECIL MARTIN, JOE MOREA, and MATTHEW WESTWOOD,<br><br>Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Ricardo Rodriguez ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### **NATURE OF THE ACTION**

1. This is an action against Garrison Capital Inc. ("Garrison," "GARS," or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

1

C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Garrison by Portman Ridge Finance Corporation ("Portman" or "PTMN"), Citadel Acquisition Sub Inc. ("Merger Sub"), a direct wholly-owned subsidiary of Portman, and Sierra Crest Investment Management LLC ("Sierra Crest"), the external investment adviser to Portman.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company has offices in New York City.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Garrison's common stock.

7.      Defendant Garrison is a business development company specializing in investments primarily in the debt and equity of middle market companies. The Company is

incorporated in Delaware and headquartered in New York City. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol, "GARS."

8. Defendant Joseph Tansey ("Tansey") is Chief Executive Officer and Chairman of the Board of the Company.

9. Defendant Brian Chase ("Chase") is a director of the Company.

10. Defendant Cecil Martin ("Martin") is a director of the Company.

11. Defendant Joe Morea ("Morea") is a director of the Company.

12. Defendant Matthew Westwood ("Westwood") is a director of the Company.

13. Defendants Tansey, Chase, Martin, Morea, and Westwood are collectively referred to herein as the "Individual Defendants."

14. Defendants Garrison and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and The Proposed Transaction

15. Garrison is an externally managed, non-diversified, closed-end management investment company that has elected to be treated as a business development company under the Investment Company Act of 1940.

16. Garrison's stated investment objective is to generate income and capital appreciation by assembling a broad portfolio of loans and debt securities of U.S.-based companies. According to Garrison, the companies which it typically extends credit to are moderately leveraged and have been rated below investment grade by national rating agencies.

17. Garrison's investment activities are managed by Garrison Capital Advisers LLC ("Garrison Advisers"). Garrison Advisers is responsible for sourcing potential investments,

conducting research and diligence on prospective investments and equity sponsors, analyzing investment opportunities, structuring Garrison's investments and monitoring its investments and portfolio companies on an ongoing basis. Garrison Advisers was organized in November 2010 and is a registered investment adviser under the Investment Advisers Act of 1940.

18. On June 24, 2020, Garrison and Portman issued a press release announcing that they had entered into a definitive agreement under which Garrison would merge with and into Portman, a business development company managed by Sierra Crest, an affiliate of BC Partners Advisors L.P. ("BC Partners") and LibreMax Capital LLC.

19. According to the announcement, in connection with the Proposed Transaction, Garrison stockholders will receive a combination of: (i) $19.1 million in cash (approximately $1.19 per share) from Portman; (ii) Portman shares valued at 100% of Portman's net asset value per share at the time of closing of the transaction in an aggregate number equal to Garrison's net asset value at closing minus the $19.1 million of Portman cash merger consideration; and (iii) an additional cash payment from Sierra Crest of $5.0 million in the aggregate, or approximately $0.31 per share. The press release states, in pertinent part:

> **Garrison Capital Inc. to Merge with Portman Ridge Finance Corporation Combined Entity To Be Managed by an Affiliate of BC Partners Advisors L.P.**
>
> June 24, 2020 19:25 ET | **Source:** Portman Ridge Finance Corporation; Garrison Capital Inc.
>
> NEW YORK, June 24, 2020 (GLOBE NEWSWIRE) -- Garrison Capital Inc. (Nasdaq: GARS) ("GARS") and Portman Ridge Finance Corporation ("PTMN") (Nasdaq: PTMN) announced today that they have entered into a definitive agreement under which GARS will merge with and into PTMN, a business development company managed by Sierra Crest Investment Management LLC ("Sierra Crest"), an affiliate of BC Partners Advisors L.P. ("BC Partners") and LibreMax Capital LLC. The transaction is the result of the previously announced review of strategic alternatives by GARS and has been approved by a unanimous vote of the Board of Directors of GARS (on the unanimous recommendation of the

Special Committee of the Board of Directors of GARS) and the Board of Directors of PTMN.

**Transaction Highlights**

- The combined company will be externally managed by Sierra Crest and, based on the respective March 31, 2020 balance sheets, not adjusted for transaction expenses, would have had total investments of approximately $638.5 million, and a net asset value of approximately $207.0 million;

- Stockholders should expect to realize immediate net investment income per share accretion following the closing of the transaction;

- The transaction is expected to deliver operational synergies for the combined company as a result of the pro forma larger scale and elimination of redundant GARS expenses;

- PTMN will assume GARS' on-balance sheet CLO liabilities at the closing of the transaction; and

- Following the transaction, current GARS stockholders are expected to own approximately 41.6% of the combined company;

Under the terms of the proposed transaction, GARS stockholders will receive a combination of (i) $19.1 million in cash (approximately $1.19 per share) from PTMN; (ii) PTMN shares valued at 100% of PTMN's net asset value per share at the time of closing of the transaction in an aggregate number equal to GARS' net asset value at closing minus the $19.1 million of PTMN cash merger consideration; and (iii) an additional cash payment from Sierra Crest, the external adviser to PTMN, of $5.0 million in the aggregate, or approximately $0.31 per share. GARS' stockholders will receive value per share of approximately 105% of GARS' net asset value per share from PTMN and Sierra Crest (based on March 31, 2020 net asset values per share of both GARS' and PTMN's stock and the aggregate value of cash consideration). Assuming a transaction based on respective March 31, 2020 net asset values for GARS ($105.7 million, or $6.59 per share) and PTMN ($120.4 million, or $2.69 per share), adjusted for expected transaction expenses, and PTMN's closing price on June 23, 2020 of $1.25, the transaction (including the additional cash payment from Sierra Crest of $0.31 per share) currently values GARS shares at approximately $3.97 per share, which represents 62% of GARS' March 31, 2020 net asset value (adjusted for expected transaction expenses) and a 43% premium to GARS' closing price on June 23, 2020.

The exchange ratio for the stock component of the merger will be determined by the net asset value of GARS and PTMN as of the closing, calculated as of 5:00 p.m. New York City time on the day prior to the closing of the transaction. In addition to approval by GARS' and PTMN's respective stockholders, the closing of the

5

merger is subject to customary conditions. The parties currently expect the transaction to be completed in the fourth calendar quarter of 2020.

*   *   *

**Transaction Advisors**
Keefe, Bruyette & Woods, *A Stifel Company* served as exclusive financial advisor to the Special Committee of GARS' Board of Directors. Proskauer Rose LLP served as counsel to GARS and Eversheds Sutherland (US) LLP served as counsel to the Special Committee of GARS' Board of Directors. Simpson Thacher & Bartlett LLP served as counsel to PTMN.

**Investor Presentation and Conference Call**
PTMN and GARS will host a joint conference call on Thursday, June 25, 2020 at 2:00 pm Eastern Time to discuss the transaction. All interested persons are invited to participate on the call and can access the conference call by dialing (866) 757-5630. International callers can access the conference by dialing (707) 287-9356. Conference ID is 1077537.

**About Garrison Capital Inc.**
Garrison Capital Inc. is an externally managed, non-diversified, closed-end management Investment Company that has elected to be treated as a business development company under the Investment Company Act of 1940. GARS is managed by its investment adviser, Garrison Capital Advisers LLC, an affiliate of Garrison Investment Group, and a registered investment adviser under the Investment Advisers Act of 1940 which provides the resources and expertise of the investment professionals at Garrison Investment Group.

GARS' filings with the Securities and Exchange Commission ("SEC"), earnings releases, press releases and other financial, operational and governance information are available on GARS' website at **http://www.garrisoncapitalbdc.com**.

**About Portman Ridge Finance Corporation**
Portman Ridge Finance Corporation (NASDAQ: PTMN) is a publicly traded, externally managed investment company that has elected to be regulated as a business development company under the Investment Company Act of 1940. PTMN's middle market investment business originates, structures, finances and manages a portfolio of term loans, mezzanine investments and selected equity securities in middle market companies. PTMN's investment activities are managed by its investment adviser, Sierra Crest Investment Management LLC, an affiliate of BC Partners Advisors L.P. and LibreMax Capital LLC.

PTMN's filings with the SEC, earnings releases, press releases and other financial, operational and governance information are available on PTMN's website at **www.portmanridge.com**.

20. On September 1, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

21. The Proxy Statement, which recommends that Garrison shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) Garrison's and Portman's financial projections; (2) the financial analyses performed by Garrison's and Garrison's Special Committee's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"), in connection with its fairness opinion; and (3) potential conflicts of interest involving KBW.

22. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) The GARS Board Recommendation; (ii) Reasons for the Mergers; and (iii) Opinion of the Financial Advisor to the GARS Special Committee.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the October 19, 2020 shareholder vote on the Proposed Transaction, Garrison shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Garrison's and Portman's Financial Projections

24. The Proxy Statement omits material information concerning Garrison's and Portman's financial projections.

25. The Proxy Statement provides that KBW considered "financial and operating forecasts and projections of GARS that were prepared by, and provided to KBW and discussed

7

with KBW by, GARS management and that were used and relied upon by KBW at the direction of such management and with the consent of the GARS Special Committee[.]"[1] *See* Proxy Statement at 63.

26. The Proxy Statement provides that KBW also considered "'street estimates' of PTMN, as well as assumed long-term PTMN growth rates provided to KBW by Sierra Crest management, all of which information was discussed with KBW by Sierra Crest management and used and relied upon by KBW based on such discussions, at the direction of GARS management and with the consent of the GARS Special Committee."[2] *See* Proxy Statement at 63.

27. The Agreement and Plan of Merger for the Proposed Transaction states that Garrison expressly "acknowledges that it . . . received and may continue to receive from [Portman, Portman's subsidiaries, its and their respective portfolio companies, and Sierra Crest (collectively, the "Parent Parties")] and their respective Representatives certain estimates, forecasts, projections and other forward-looking information regarding the assets, liabilities, financial condition, operations and prospects, as well as certain forward-looking business plan information, of the Parent Parties and their respective businesses and operations[.]" *See* Proxy Statement at AA-19.

---

[1] This is also reflected in the text of KBW's purported fairness opinion, which states that KBW "reviewed, analyzed and relied upon material bearing upon the financial and operating condition of Garrison and Portman Ridge and bearing upon the Transaction, including . . . financial and operating forecasts and projections of Garrison that were prepared by, and provided to us and discussed with us by, Garrison management and that were used and relied upon by us at the direction of such management and with the consent of the Committee[.]" *See* Proxy Statement at AB-2 to AB-3.

[2] This is also reflected in the text of KBW's purported fairness opinion, which states that KBW "reviewed, analyzed and relied upon material bearing upon the financial and operating condition of Garrison and Portman Ridge and bearing upon the Transaction, including . . . consensus 'street estimates' of Portman Ridge, as well as assumed long-term Portman Ridge growth rates provided to us by PR Advisor management, all of which information was discussed with us by PR Advisor management and used and relied upon by us based on such discussions, at the direction of Garrison management and with the consent of the Committee." *See* Proxy Statement at AB-2 to AB-3.

28. Similarly, the Agreement and Plan of Merger states that Portman and Merger Sub expressly acknowledge that they "received and may continue to receive from [Garrison, Garrison's subsidiaries, and its and their respective portfolio companies (the "Company Parties")] and their respective Representatives certain estimates, forecasts, projections and other forward-looking information regarding the assets, liabilities, financial condition, operations and prospects, as well as certain forward-looking business plan information, of the Company Parties and their respective businesses and operations[.]" *See* Proxy Statement at AA-29.

29. The Proxy Statement, however, fails to disclose any of the foregoing financial projections despite the fact that they were prepared by certain relevant parties, including Garrison's management, and were used and relied upon by KBW in connection with its fairness opinion and analyses.

30. The disclosure of the aforementioned projected financial information is material because it would provide Garrison shareholders with a basis to project the future financial performance of Garrison and the combined company and would allow shareholders to better understand the financial analyses performed by Garrison's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Garrison and its financial advisor, Garrison shareholders are unable to determine how much weight, if any, to place on the Company's advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Garrison shareholders.

   **2. Material Omissions Concerning KBW's Financial Analyses**

32. In connection with the Proposed Transaction, the Proxy Statement omits material

9

information concerning KBW's financial analyses.

33. With respect to KBW's "*Selected Companies Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company utilized by KBW in its analysis.

34. The Proxy Statement fails to disclose the following concerning KBW's "*Selected Transactions Analysis—BDCs*": (1) the rationale for including these selected acquisitions which purportedly date back to 2009 in its analysis; and (2) the individual multiples and financial metrics of each transaction utilized by KBW in its analysis, including the Price/NAV Per Share and premiums.

35. The Proxy Statement fails to disclose the following concerning KBW's "*Dividend Discount Analysis of GARS*": (1) the financial and operating forecasts and projections of Garrison that were provided by Garrison management, and all underlying line items thereto; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 20.0% to 25.0%, (ii) terminal multiple range of 0.4x to 1.0x, and (iii) terminal dividend yield range of 17.0% to 9.0%; (3) the estimated future dividends of Garrison over the period from the assumed closing date of the proposed transaction through December 31, 2023; (4) the implied terminal values of Garrison; and (5) Garrison's estimated fiscal year 2023 dividends.

36. The Proxy Statement fails to disclose the following concerning KBW's "*Dividend Discount Analysis of PTMN*": (1) the "street estimates" of Portman and assumed long-term growth rates for Portman provided by Sierra Crest management; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 20.0% to 20.5%, (ii) terminal multiple range of 0.4x to 1.0x, and (iii) terminal dividend yield range of 17.0% to 9.0%; (3) the estimated future dividends of Portman over the period from the assumed closing date of the transaction through December 31,

2023; (4) the implied terminal values of Portman; and (5) Portman's estimated fiscal year 2023 dividends.

37. The Proxy Statement fails to disclose the following concerning KBW's "*Liquidation Analysis of GARS*": (1) the projections of net proceeds that could be generated in a hypothetical liquidation of Garrison that were prepared by Garrison management; and (2) the individual inputs and assumptions underlying the discount rates ranging from 20.0% to 25.0%.

38. The valuation methods, underlying assumptions, and key inputs used by KBW in rendering its purported fairness opinion must be fairly disclosed to Garrison shareholders. The description of KBW's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Garrison shareholders are unable to fully understand KBW's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Garrison shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving KBW

39. The Proxy Statement omits material information concerning potential conflicts of interest involving KBW.

40. The Proxy Statement provides that "[d]uring the two years preceding the date of KBW's opinion, KBW provided investment banking and financial advisory services to PTMN (formerly named KCAP Financial, Inc. prior to April 1, 2019) and received compensation for such services."

41. The Proxy Statement, however, fails to disclose the amount of compensation KBW received for providing such services to Portman and/or KCAP Financial, Inc. during the two years

preceding the date of KBW's fairness opinion.

42. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Garrison shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

47. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information

13

with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:  September 23, 2020                              Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
           zhalper@halpersadeh.com

15

*Counsel for Plaintiff*

Case 1:20-cv-04512-RRM-PK   Document 1   Filed 09/23/20   Page 16 of 16 PageID #: 16

*Counsel for Plaintiff*